**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BROADWAY KLEER-GUARD CORP. d/b/a BROADWAY INDUSTRIES, BROADWAY HOLDINGS IX, LLC, and BROADWAY HOLDINGS XI, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>COTTRELL PAPER COMPANY, INC., MILL 26, INC., JOSH COTTRELL, JAMES COTTRELL II A/K/A JIMMY COTTRELL II, ADIRONDACK TISSUE SUPPLY LLC, MICHAEL O'CONNOR, COTTRELL-ADIRONDACK PARTNERSHIP, HEMP PAPER COMPANY, LLC, HAWAII FIBERS, LLC, BENJAMIN DRAPER A/K/A BENJAMIN GRANT BOCEPHUS DRAPER, JULIA PARK, and COTTRELL-HEMP PAPER PARTNERSHIP,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.:<br><br>**JURY TRIAL DEMANDED**<br><br>Related Case:<br>*Broadway Kleer-Guard Corp. et al. v. Cottrell Paper Company, Inc. et al.*<br>Civil Action No.: 3:24-CV-07898-MAS-RLS |

**VERIFIED COMPLAINT**

Plaintiffs Broadway Kleer-Guard Corp. d/b/a Broadway Industries, Broadway Holdings IX, LLC, and Broadway Holdings XI, LLC (collectively, "Plaintiffs" and/or "Broadway"), by their counsel Levitt LLP and Weiss & Weiss, Attorneys at Law, P.C., as and for their Verified Complaint against Cottrell Paper Company, Inc. ("Cottrell"), Mill 26, Inc. ("Mill 26"), Josh Cottrell, James Cottrell II a/k/a Jimmy Cottrell II (Defendants Cottrell, Mill 26, Josh Cottrell, and James Cottrell II are, collectively, the "Cottrell Defendants"), Adirondack Tissue Supply, LLC ("Adirondack"), Michael O'Connor (Defendants Adirondack and Michael O'Connor are, collectively, the "Adirondack Defendants"), Cottrell-Adirondack Partnership (consisting of each of the Cottrell Defendants and Adirondack Defendants, in whole or in part), Hemp Paper

Company, LLC ("Hemp Paper"), Hawaii Fibers, LLC ("Hawaii Fibers"), Benjamin Draper a/k/a Benjamin Grant Bocephus Draper ("Draper"), Julia Park ("Park") (Defendants Hemp Paper, Hawaii Fibers, Draper, and Park are, collectively, the "Hemp Paper Defendants"), and Cottrell-Hemp Paper Partnership (consisting of each of the Cottrell Defendants and Hemp Paper Defendants, in whole or in part) (the Cottrell Defendants, the Adirondack Defendants, the Cottrell-Adirondack Partnership, the Hemp Paper Defendants, and Cottrell-Hemp Paper Partnership are, collectively, the "Defendants"), allege as follows:

## INTRODUCTION

1. In August 2025, with the assistance of Hon. Noel Hillman (Ret.), Broadway and the Cottrell Defendants entered into a Settlement Agreement which resolved a prior action in this Court (Civil Action No.: 3:24-CV-07898-MAS-RLS, ECF 48) – or so Broadway thought.

2. The Settlement Agreement, *inter alia*, granted the Cottrell Defendants a limited, non-exclusive, and non-transferable license to manufacture, market, and sell 100% hemp paper bags of limited sizes, within limited markets (the "Limited License"), and the Cottrell Defendants assigned Broadway Holdings XI, LLC complete ownership over the Broadway Patent (as will be defined below). Broadway Holdings XI, LLC is now the sole owner of U.S. Patent No. 12,752,991 for 100% hemp paper bags (the "Broadway Patent").

3. Although the Settlement Agreement was intended to finally resolve Broadway's disputes with the Cottrell Defendants, Broadway has since learned that, beginning at a time that is as of yet unknown to Broadway, the Cottrell Defendants entered into partnerships with the Adirondack Defendants, and with the Hemp Paper Defendants (and, upon information and belief, others as well). Under these partnerships, the Cottrell Defendants made unauthorized disclosures of Broadway's trade secrets and/or confidential information, which were subject to Broadway's

one-way non-disclosure agreement (in favor of Broadway) with the Cottrell Defendants (the "NDA"). Additionally, the Cottrell Defendants have assigned or transferred some of their rights under the Limited License to the Adirondack Defendants, as well as to the Hemp Paper Defendants, in violation of such Limited License. Accordingly, the Adirondack Defendants and the Hemp Paper Defendants are marketing and selling 100% hemp paper bags manufactured by Cottrell without authorization of Broadway, and by virtue of same, are additionally infringing the Broadway Patent.

## PARTIES

4. Plaintiff Broadway Kleer-Guard Corp. is a domestic corporation incorporated under the laws of the State of New Jersey with its principal place of business located at 1 South Middlesex Ave., Monroe Township, New Jersey 08831.

5. Plaintiff Broadway Holdings IX, LLC is a domestic limited liability company formed under the laws of the State of New Jersey with its principal place of business located at 1 South Middlesex Ave., Monroe Township, New Jersey 08831.

6. Plaintiff Broadway Holdings XI, LLC is a domestic limited liability company formed under the laws of the State of New Jersey with its principal place of business located at 1 South Middlesex Ave., Monroe Township, New Jersey 08831.

7. Upon information and belief, Defendant Cottrell Paper Company, Inc. is a corporation incorporated under the laws of the State of New York, with a place of business located at 1135 Rock City Road, Rock City Falls, New York 12863.

8. Upon information and belief, Defendant Mill 26, Inc. is a corporation incorporated under the laws of the State of New York, with a place of business located at 1135 Rock City Road, Rock City Falls, New York 12863.

9. Upon information and belief, Defendant Mill 26 is a subsidiary of Cottrell.

10. Upon information and belief, Defendant Mill 26 is an affiliated company of Cottrell.

11. Upon information and belief, Defendant Mill 26 is owned, in whole or in part, by all or some of the other Cottrell Defendants.

12. Upon information and belief, Defendant Josh Cottrell is a natural person with a place of business located at 1135 Rock City Road, Rock City Falls, New York 12863.

13. Upon information and belief, Defendant Josh Cottrell is an owner of Cottrell.

14. Upon information and belief, Defendant Josh Cottrell is an officer of Cottrell.

15. Upon information and belief, Defendant Josh Cottrell is a director of Cottrell.

16. Upon information and belief, Defendant Josh Cottrell is an owner of Mill 26.

17. Upon information and belief, Defendant Josh Cottrell is an officer of Mill 26.

18. Upon information and belief, Defendant Josh Cottrell is a director of Mill 26.

19. Upon information and belief, Defendant James Cottrell II is a natural person with a place of business located at 1135 Rock City Road, Rock City Falls, New York 12863.

20. Upon information and belief, Defendant James Cottrell II is an owner of Cottrell.

21. Upon information and belief, Defendant James Cottrell II is an officer of Cottrell.

22. Upon information and belief, Defendant James Cottrell II is a director of Cottrell.

23. Upon information and belief, Defendant James Cottrell II is an owner of Mill 26.

24. Upon information and belief, Defendant James Cottrell II is an officer of Mill 26.

25. Upon information and belief, Defendant James Cottrell II is a director of Mill 26.

26. Upon information and belief, Defendant Adirondack Tissue Supply, LLC is a limited liability company formed under the laws of the State of New York, with a place of business located at 2100 Doubleday Ave., Ballston Spa, New York 12020.

27. Upon information and belief, Defendant Michael O'Connor is a natural person with a place of business located at 2100 Doubleday Ave., Ballston Spa, New York 12020.

28. Upon information and belief, Defendant Michael O'Connor is the owner of Defendant Adirondack.

29. Upon information and belief, Defendant Michael O'Connor is the President of Defendant Adirondack.

30. Upon information and belief, Defendant Michael O'Connor is the Director of Operations of Defendant Adirondack.

31. Upon information and belief, Defendant Cottrell-Adirondack Partnership is an unincorporated association with a place of business located at 1135 Rock City Road, Rock City Falls, New York 12863.

32. Upon information and belief, the Cottrell Defendants and Adirondack Defendants are, in whole or in part, partners in the Defendant Cottrell-Adirondack Partnership.

33. Upon information and belief, Defendant Hemp Paper Company, LLC is a limited liability company organized under the laws of the State of Oregon, with a place of business located at 1415 NE Holland Street, Portland, Oregon 97211.

34. Upon information and belief, Defendant Hawaii Fibers, LLC is a limited liability company organized under the laws of the State of Hawaii, with a place of business located at 430 Keoniana Street, #1204, Honolulu, Hawaii 96815.

35. Upon information and belief, Hawaii Fibers is a subsidiary of Hemp Paper.

36. Upon information and belief, Hawaii Fibers is an affiliated company of Hemp Paper.

37. Upon information and belief, Hawaii Fibers is owned, in whole or in part, by all or some of the other Hemp Paper Defendants.

38. Upon information and belief, Defendant Benjamin Draper a/k/a Benjamin Grant Bocephus Draper is a natural person with a place of business located at 1415 NE Holland Street, Portland, Oregon 97211.

39. Upon information and belief, Draper is a member of Hemp Paper.

40. Upon information and belief, Draper is managing member of Hemp Paper.

41. Upon information and belief, Draper is Chief Executive Officer of Hemp Paper.

42. Upon information and belief, Draper is a member of Hawaii Fibers.

43. Upon information and belief, Defendant Julia Park is a natural person with a place of business located at 1415 NE Holland Street, Portland, Oregon 97211.

44. Upon information and belief, Park is a member of Hemp Paper.

45. Upon information and belief, Park is a member of Hawaii Fibers.

46. Upon information and belief, Park is managing member of Hemp Paper.

47. Upon information and belief, Park is managing member of Hawaii Fibers.

48. Upon information and belief, Park is Chief Executive Officer of Hawaii Fibers.

49. Upon information and belief, Hemp Paper and Hawaii Fibers are affiliates that, from time to time, operate as a single, integrated enterprise and as alter egos of one another and of their common principals, Defendants Draper and Park, including, but not limited to:

a. Indistinguishable product sourcing whereby products distributed by Hawaii Fibers are integrated into products sold by Hemp Paper, which, as Hawaii

Fibers claims on its website, "[o]ur partnership [with Hemp Paper] creates a closed-loop supply chain"; and

b. Interrelated order fulfillment whereby Hawaii Fibers and/or Park fulfills orders placed through Hemp Paper, without so advising Hemp Paper's customers.

50. Upon information and belief, Defendants Draper and Park dominate and control both Hemp Paper and Hawaii Fibers, based upon, but not limited to the following (which are in addition to other facts to be uncovered):

a. The two entities share common ownership, management, principals, personnel, and business operations;

b. The two entities hold themselves out to the public as a single enterprise, including through their interrelated websites and social media; and

c. The two entities fail to observe corporate formalities as between themselves, including, as described above, by commingling assets and business operations.

51. Because Hemp Paper, Hawaii Fibers, Draper, and Park are the alter egos of one another, the separate corporate existences of Hemp Paper and/or Hawaii Fibers should be disregarded, and the acts of each should be attributable to all.

52. Upon information and belief, Defendant Cottrell-Hemp Paper Partnership is an unincorporated association with a place of business located at 1135 Rock City Road, Rock City Falls, New York 12863.

53. Upon information and belief, the Cottrell Defendants, and Hemp Paper Defendants, are, in whole or in part, partners in the Cottrell-Hemp Paper Partnership.

## JURISDICTION AND VENUE

54. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1338(a) for claims under the Defend Trade Secrets Act of 2016, and for patent infringement.

55. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy.

56. Jurisdiction and venue in this Court are proper under the forum selection clause in Paragraphs 16 and 17 of the Settlement Agreement, under which the Cottrell Defendants, and their successors and assigns, consented to the jurisdiction and venue of the United States District Court for the District of New Jersey.

57. Jurisdiction and venue in this Court over the Adirondack Defendants and Hemp Paper Defendants are proper because, in addition to other acts that are yet to be uncovered:

a. The Adirondack Defendants and the Cottrell Defendants each hold themselves out on their respective websites and/or social media as “partners” of each other, and therefore the Cottrell Defendants’ forum contacts in New Jersey and this District are imputed to the Adirondack Defendants;

b. The Hemp Paper Defendants additionally hold themselves out as “partners” with the Cottrell Defendants, including in a book authored by Defendant Draper entitled *HEMP: Rewriting Paper’s Future with Ancient Fibers of the Past*, having a release date of January 2025;

c. Because the Cottrell Defendants and the Adirondack Defendants each hold themselves out as “partners” of the other, and because the Cottrell Defendants have made assignments of Limited License rights to the

Adirondack Defendants without authorization from Broadway, in violation of the Limited License, the Cottrell Defendants' consent to this forum under Paragraph 16 of the Settlement Agreement, as well as the Cottrell Defendants' agreement that the Settlement Agreement is binding on each of their "successors and assigns" under Paragraph 17 of the Settlement Agreement, are likewise binding on the Adirondack Defendants;

d. Because the Hemp Paper Defendants hold themselves out as "partners" of the Cottrell Defendants, and because the Cottrell Defendants have made assignments of Limited License rights to the Hemp Paper Defendants without authorization from Broadway, in violation of the Limited License, the Cottrell Defendants' consent to this forum under Paragraph 16 of the Settlement Agreement, as well as the Cottrell Defendants' agreement that the Settlement Agreement is binding on each of the Cottrell Defendants' "successors and assigns" under Paragraph 17 of the Settlement Agreement, are likewise binding on the Hemp Paper Defendants; and

e. The Adirondack Defendants and the Hemp Paper Defendants have purposefully directed their activities at New Jersey and this District through, among other things, their partnership and dealings with the Cottrell Defendants, and the conduct giving rise to Broadway's claims arises out of and relates to those activities.

58. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Broadway's claims occurred, or a substantial part of the property that is the subject of the action is situated in this District.

## FACTS COMMON TO ALL CLAIMS

**Broadway's History, Development, and Ownership of the 100% Hemp Paper Bags Patent**

59. Broadway Kleer-Guard Corp. is a leading manufacturer and distributor of paper and plastic packaging products, including proprietary products, since 1945.

60. Over the approximately 80 years that Broadway Kleer-Guard Corp. and its affiliated companies have been in business, it has invested many millions of dollars in design, engineering, and equipment to manufacture and sell its packaging products to its customers, which include among them several household names.

61. The Broadway companies hold some 15 issued patents, with many more that are patent pending.

62. Beginning in or about 2020, the Broadway companies developed products, methodologies, processes, and sales and marketing strategies to manufacture bags and other products out of alternative fiber substrates, including hemp, offering a more sustainable alternative compared to wood pulp used to make paper from trees. The prospect of the Broadway companies leveraging their decades of manufacturing experience to make and sell hemp paper bags would enable it to expand its product line, in part in response to new statewide government restrictions beginning in or about that time, curtailing the use of plastic bags.

63. On or about June 25, 2021, Broadway and the Cottrell Defendants entered into a one-way non-disclosure agreement, with Broadway Kleer-Guard Corp. as the disclosing party, in furtherance of a contemplated supplier relationship.

64. Shortly thereafter, Broadway filed a provisional patent application on July 21, 2021, and a utility patent application on June 30, 2022, concerning hemp paper bags, including 100% hemp paper bags.

65. Under the NDA, the Cottrell Defendants agreed, *inter alia*:

a. At Paragraph 1.1 thereof, that "Confidential Information" includes "any written or oral information or materials of a confidential or proprietary nature relating to the existing or prospective business and/or technology of Broadway … whether written or oral, whether or not such information is identified as Confidential Information, and regardless of the medium in which such information exists, including … trade secrets, know-how, ideas, inventions, improvements, and discoveries";

b. At Paragraphs 2 and 3, that "[a]ll Confidential Information will remain the property of Broadway", and that "Cottrell will not disclose Confidential Information to any Third party without Broadway's prior written consent. Cottrell will use Confidential Information only for the purpose of engaging in business activities with Broadway and will not use it for Cottrell's own benefit", and additionally, that "[b]oth Parties acknowledge that Confidential Information constitutes a valuable and unique asset" to Broadway; and

c. At Paragraph 4, Cottrell agreed that Broadway likewise owned any "improvements" made to Broadway's technology.

66. Under the NDA, Broadway disclosed valuable trade secrets and/or confidential information, including, but not limited to, related to manufacturing 100% hemp paper bags, and manufacturing paper bags made from blends, including, but not limited to, of hemp and wood pulp, as well as non-paper bag applications of the technology.

67. By way of illustration only, in an email exchange dated April 17, 2023, Broadway's Vice President of Operations disclosed to Defendant Josh Cottrell Confidential Information

relating to a paper bag made out of a hemp / non-hemp blend, and requested that the Cottrell Defendants manufacture paper composed of such blend. Defendant Josh Cottrell responded "Unfortunately we are not interested in manufacturing a blended material."

68. The market for hemp paper bags is rapidly growing. According to market researcher Future Market Insights, Inc., the global hemp paper bag market is on an upward trajectory and within the next decade is estimated to exceed $1.3 billion.

69. Broadway Holdings XI, LLC has now obtained the Broadway Patent, to wit, U.S. Patent No. 12,752,991 concerning 100% hemp paper bags, with an allowance date of July 2, 2026, and an issue date of October 6, 2026.

**Broadway's Prior Action with the Cottrell Defendants, and the 2024 Failed Settlement**

70. In July 2024, Broadway sued the Cottrell Defendants for, *inter alia*, breaches of the NDA, and related claims.

71. In September 2024, Broadway and the Cottrell Defendants unsuccessfully attempted to settle their dispute. After the principals shook hands on an agreement in principle, which provided for, *inter alia*, the Cottrell Defendants obtaining a limited license from Broadway, what followed were months of protracted, backwards negotiations whereunder the Cottrell Defendants took unreasonable positions that appeared to defeat the purpose of the contemplated license arrangement altogether. Consequently, those settlement negotiations ultimately failed.

72. Unknown to Broadway at the time, the 'cratering' of the settlement facilitated the Cottrell Defendants entering into a business relationship and partnership with the Hemp Paper Defendants, to the detriment of Broadway.

73. As part of this business relationship and partnership, the Cottrell Defendants disclosed Broadway's trade secrets and/or confidential information to Defendant Draper relating

to manufacturing hemp paper bags out of blends, including but not limited to, of hemp and wood pulp, as well as various non paper-bag applications, to wit, Confidential Information that Broadway had previously disclosed to the Cottrell Defendants under the NDA.

74. The Cottrell Defendants' disclosure of Confidential Information to Defendant Draper occurred while the NDA remained in full force and effect.

75. In November 2024, Hemp Paper was formed.

76. Also in or around November 2024, the Hemp Paper Defendants began to market a "prototype" hemp paper bag, including on Instagram.

77. Shortly thereafter, the Hemp Paper Defendants began to market, and thereafter, sell 100% hemp paper bags manufactured by the Cottrell Defendants.

78. In a book authored by Defendant Draper and released in January 2025, *HEMP: Rewriting Paper's Future with Ancient Fibers of the Past*, Defendant Draper disclosed, by way of illustration only, that:

a. Defendant Draper not only made multiple visits to the Cottrell Defendants, but he also learned from the Cottrell Defendants' engineers, while the NDA remained in full force and effect, how to develop hemp paper bags;

b. Defendant Draper developed a "partnership" with the Cottrell Defendants; and

c. Under this partnership, both Defendant Draper and the Cottrell Defendants anticipated making substantial sales of hemp paper bags.

79. The disclosures in Defendant Draper's book acknowledge, among other things, that the Hemp Paper Defendants worked with the Cottrell Defendants, and in so doing, the Cottrell Defendants breached their obligations to Broadway to maintain the secrecy of the Confidential Information Broadway had disclosed under the NDA.

**<u>Broadway's Settlement with the Cottrell Defendants</u>**

80. While still unaware of the Cottrell Defendants' partnership with the Hemp Paper Defendants, Broadway and the Cottrell Defendants later resolved their prior action under a Settlement Agreement dated August 19, 2025 (the "Settlement"), which was entered into with the assistance of Hon. Noel Hillman (Ret.).

81. Under the Settlement, among other things, the Cottrell Defendants assigned Broadway all patent ownership interest in 100% hemp paper bags. As part of the Settlement, Defendants Josh Cottrell and James Cottrell II were named as co-inventors on the patent application that ultimately became the Broadway Patent.

82. Broadway additionally granted the Cottrell Defendants a non-exclusive, limited license to manufacture, market, and sell 100% hemp paper bags of limited sizes, within limited markets, as set forth in the Limited License.

83. Under Paragraph 2(a), the Limited License only granted the Cottrell Defendants permission to manufacture and sell certain size bags: "Broadway hereby grants Cottrell a non-exclusive license … to make, use, sell, and offer for sale two (2), four (4), six (6), eight (8) and ten (10) pound flat bottom hemp paper bags solely made from one hundred percent (100%) hemp and made by Cottrell, solely within the markets defined in Paragraph 2(c) …".

84. The Limited License expressly limited the markets in which Cottrell could sell hemp paper bags. Under Paragraph 2(c), the Limited License permitted the Cottrell Defendants to operate only in certain markets: "Cottrell may sell Hemp Paper Bags to cannabis dispensaries, colleges, universities, high schools, and online storefronts (e.g., Amazon and Etsy) (the "Primary Markets"). Additionally, Cottrell may sell Hemp Paper Bags to "Additional Markets", which are defined as (i) Stewart's Shops (without limitation as to number of locations); and (ii) to

convenience stores, grocery stores, restaurants, and hotels, solely to the extent they have no more than 3 locations each." Additionally, Paragraph 2(d) prohibited Cottrell from selling hemp paper bags in specified markets served by Broadway.

85. Under Paragraph 2(g), the Limited License was non-transferable: "The License for Hemp Paper Bags is not transferable and/or assignable by Cottrell without the prior written consent of Broadway".

86. Under Paragraph 17(a) of the Settlement, the Parties acknowledged that any Default "will cause irreparable injury to the other Party that is inadequately compensable in damages," and agreed that the non-breaching Party "shall be entitled to obtain immediate injunctive relief to prevent [further] breaches of this Agreement or threatened breaches without having to prove actual damages or post a bond … in addition to any other legal remedies that may be available to any Party."

87. Finally, aside from the parties agreeing to dismiss their respective claims and defenses, Broadway granting the Limited License to the Cottrell Defendants, the Cottrell Defendants assigning all ownership interest in the Broadway Patent to Broadway, and Broadway agreeing to name the Cottrell Defendants' principals Defendants Josh Cottrell and James Cottrell II as patent co-inventors, the parties additionally agreed under Paragraph 10 of the Settlement that the NDA would be deemed null and void (albeit, only as of August 19, 2025, not retroactively).

**<u>The Cottrell Defendants' Fraudulent Inducement of Broadway to Enter into the Settlement</u>**

88. After delaying, and then, by their conduct, cratering the 2024 settlement, the Cottrell Defendants finally entered into the Settlement, including the Limited License.

89. Upon information and belief, the Cottrell Defendants never intended to abide by the Settlement's and Limited License's terms.

90. The Cottrell Defendants engaged and/or were engaging in acts, prior to entering into the Settlement and Limited License, that they knew, at the time they entered into the Settlement and Limited License, would constitute violations of the Settlement and Limited License.

91. The Cottrell Defendants entered into the Settlement and Limited License anyway.

92. At or around the time of the Settlement, the Cottrell Defendants were already violating the terms of the NDA by disclosing Confidential Information to the Hemp Paper Defendants.

93. At or around the time of the Settlement, the Cottrell Defendants were also negotiating to sell, if not already selling, hemp paper bags to the Adirondack Defendants and the Hemp Paper Defendants, in violation of the Settlement and Limited License.

94. In connection with entering into the Settlement, the Cottrell Defendants made material representations of presently existing fact to Broadway, including, under Paragraph 18 of the Settlement, that "there are no pending agreements, transactions or negotiations to which they are parties that would render this Agreement or any part hereof void, voidable or unenforceable."

95. Based on the Cottrell Defendants' conduct described above, including their dealings with the Adirondack Defendants and the Hemp Paper Defendants before or around the time of the Settlement, the foregoing representations were false when made, and the Cottrell

Defendants knew them to be false.

96. The Cottrell Defendants made these misrepresentations with the intention that Broadway rely thereon to enter into the Settlement.

97. Broadway reasonably relied on the Cottrell Defendants' representations in entering into the Settlement, including, among other things, by granting the Limited License, by agreeing to dismiss claims and exchange conditional releases under Paragraphs 11 and 13 of the Settlement, and by agreeing to the limitation on the Limited License royalty due to Broadway, under Paragraphs 3 and 4 of the Settlement.

98. Broadway reasonably relied on the Cottrell Defendants' representations by additionally agreeing to the nullification of the NDA under Paragraph 10 of the Settlement, which nullification was ostensibly part and parcel of an effort by the Cottrell Defendants to cleanse the ongoing misappropriation of Broadway's Confidential Information.

**The Cottrell Defendants' Breaches of the Limited License; the Adirondack Defendants' and Hemp Paper Defendants' Interference with the Limited License; and Patent Infringement**

99. The Cottrell Defendants additionally engaged in acts in breach of their obligations to Broadway under the Settlement and Limited License.

100. These breaches included the Cottrell Defendants' partnerships with some or all of the Adirondack Defendants and Hemp Paper Defendants, whereunder the Cottrell Defendants have made transfers of their rights under the non-transferable Limited License to offer for sale and sell 100% hemp paper bags, without authorization from Broadway.

101. Without any license or prior written consent from Broadway under the Limited License, at least as early as the date of the Limited License, the Hemp Paper Defendants began to use, and continue to use, offer for sale, and sell 100% hemp paper bags that are covered under the

Limited License, and additionally are the same as, and embody and are covered by one or more claims of, the Broadway Patent, including, through an Amazon.com storefront, and to grocers (including Safeway), Hawaii State Federal Credit Union, Turning Point Brands, hotels, restaurants, and cannabis dispensaries, among other customers.

102. Without any license or prior written consent from Broadway under the Limited License, at least as early as November 2025, the Adirondack Defendants began to use, and continue to use, offer for sale, and sell 100% hemp paper bags that are covered under the Limited License, and additionally, are the same as, and embody and are covered by one or more claims of, the Broadway Patent, selling co-branded "ATS Warehouse X Mill26" 100% hemp paper bags to customers via its website, and advertising distribution "across the Northeast".

103. By, among other things, the Adirondack Defendants' statements on their website and/or social media, and the Hemp Paper Defendants' statements on their website and/or social media, both the Adirondack Defendants and Hemp Paper Defendants began using, offering for sale, and/or selling, without any license or prior written consent from Broadway under the Limited License:

a. The same 100% hemp paper bags that are the subject of the Broadway Patent;
b. In the exact sizes that were not licensed to them under the Limited License, namely, sizes 2, 4, 6, 8, and 10 (with both the Adirondack Defendants and Hemp Paper Defendants referring to size 4 as "popular"); and
c. To markets that the Cottrell Defendants are prohibited from selling to under the Limited License, including, but not limited to, distributors, cafes, grocery stores, and eco-retailers.

104. On their respective websites, both the Cottrell Defendants and the Adirondack

Defendants each hold themselves out as "partners" of each other.

105. Defendant Draper, in his book, holds the Cottrell Defendants and the Hemp Paper Defendants out as "partners".

106. By virtue of their partnerships with the Cottrell Defendants, both the Adirondack Defendants and the Hemp Paper Defendants knew of and/or had reason to know of the publicly filed Settlement and Limited License with the Cottrell Defendants.

107. Additionally, the Hemp Paper Defendants hold themselves out, including on Hemp Paper's and Hawaii Fibers' websites, and/or on social media, as the inventors of bags made from 100% hemp paper, which is demonstrably false given that Broadway caused its 100% hemp paper bag patent application to be filed over two years prior to such representations.

108. Broadway has begun to discover that the Cottrell Defendants have violated and/or are continuing to violate the terms of the Limited License in other ways.

109. By way of illustration only, Mill 26 product listings, including, but not limited to, on eBay as well as on Etsy, have offered for sale three (3) pound bags, in multiple sizes, *e.g.*, "Hemp Paper Bags 3# (100,000 ct) 100% Hemp Bag", in violation of the Limited License's prohibition against the Cottrell Defendants selling bag sizes other than two (2), four (4), six (6), eight (8) and ten (10) pound flat bottom hemp paper bags.

110. The Adirondack Defendants' and the Hemp Paper Defendants' marketing and sales of 100% hemp paper bags, without prior written consent from Broadway under the Limited License, constitute infringement of the Broadway Patent.

**The Cottrell Defendants' Further Misrepresentations and Concealment**

111. On or about October 14, 2026, after the Broadway Patent issued, Steve Kohn, Broadway's Chief Executive Officer, wrote to Defendant Josh Cottrell to express concern about websites advertising and selling 100% hemp paper bags, to confirm that the Cottrell Defendants were not, as the Limited License provides, selling 100% hemp paper bags to resellers (*e.g.*, assigning the license without Broadway's prior written consent), and to ask how other purported sellers were obtaining their 100% hemp paper bags.

112. Specifically, Mr. Kohn advised Defendant Josh Cottrell that the Adirondack Tissue Supply website was advertising 100% hemp paper bags bearing a Mill 26 logo; that the Settlement does not give the Cottrell Defendants the right to transfer the Limited License to third parties and restricts the sizes and markets in which the Cottrell Defendants may sell; and that any sales by the Cottrell Defendants to the Adirondack Defendants, and any sales of 100% hemp paper bags by the Adirondack Defendants, in any market, to any customer, were prohibited by the Settlement.

113. In response, and with the intent that Broadway rely thereon and refrain from enforcing its rights, Defendant Josh Cottrell made material misrepresentations of presently existing facts to Broadway, including that

a. "I am not transferring the license and they are just a salesperson reaching out to dispensaries that they already sell to";

b. "Cottrell controls who the bags get sold to and we have only focused on dispensaries with the little bit of sales that we have done"; and

c. "Adirondack has not sold any bags to any customers."

114. The foregoing representations were false and misleading when made, and

Defendant Josh Cottrell knew them to be false.

115. In truth, and as the Adirondack Defendants' own website and social media reflect, the Adirondack Defendants were already marketing and selling co-branded "ATS Warehouse X Mill26" 100% hemp paper bags to a variety of customers not limited to dispensaries, and were additionally advertising distribution "across the Northeast".

116. Josh Cottrell additionally made material misrepresentations by omission.

117. By way of example, although Broadway asked directly how other purported sellers were obtaining 100% hemp paper bags, and although Defendant Josh Cottrell undertook to respond to Broadway's concerns regarding unauthorized sellers, Defendant Josh Cottrell falsely disclosed the nature of the partnership with the Adirondack Defendants while concealing altogether, at least, the Cottrell Defendants' partnership and dealings with other unauthorized sellers, namely, the Hemp Paper Defendants.

118. By way of further example, without ever disclosing the Hemp Paper Defendants at all, Defendant Josh Cottrell represented that there would be minimal sales of hemp paper bags, despite the Cottrell Defendants telling Defendant Draper that the Cottrell Defendants expected that there would be substantial sales of hemp paper bags.

119. Given the ongoing contractual relationship between Broadway and the Cottrell Defendants and Broadway's direct inquiry, Defendant Josh Cottrell had a duty to disclose the Cottrell Defendants' dealings with the Adirondack Defendants as well as the Hemp Paper Defendants (and anyone else), and his failure to do so, in order to conceal his breaches of the Settlement and Limited License, constitutes fraud.

120. Defendant Josh Cottrell's partial disclosure of the Adirondack arrangement, while concealing the Hemp Paper Defendants relationship, was itself misleading and was made to

forestall Broadway's enforcement of its rights and to perpetuate the concealment of the unauthorized conduct that began at or around, if not well before the Settlement.

121. Defendants' conduct is ongoing.

122. In light of the foregoing conduct, and the pervasiveness of that conduct, it would be futile for Broadway to request that the Cottrell Defendants cure their defaults under the Settlement, or that the Adirondack Defendants or the Hemp Paper Defendants cease and desist from their infringement and tortious conduct.

123. The foregoing acts by Defendants are illustrative in nature, and are in addition to other acts that are yet to be uncovered.

124. Any and all conditions precedent to asserting the following causes of action have either occurred or been waived.

**FIRST COUNT AGAINST THE COTTRELL DEFENDANTS**
**(Breach of Contract – Non-Disclosure Agreement)**

125. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "124" above, as if same were more fully set forth at length herein.

126. Broadway has performed and fully complied with all of its obligations under the NDA at all times while it was in full force and effect.

127. The Cottrell Defendants have failed to comply with their obligations under the NDA, to wit, by disclosing and/or using Broadway's Confidential Information while the NDA remained in full force and effect, without Broadway's permission, for purposes unrelated to the NDA.

128. The aforementioned acts of the Cottrell Defendants, as well as other acts to be discovered, constitute breaches of contract.

129. As a result of the foregoing, Broadway has been damaged and demands judgment against the Cottrell Defendants in an amount to be determined at trial, together with income and/or a reasonable royalty on every sale of each of the Cottrell Defendants' hemp paper products in an amount to be determined at trial, and that each of the Cottrell Defendants additionally provide to Broadway an accounting, calculated on a monthly basis, of all income or royalties each of the Cottrell Defendants have received or anticipate receiving for every sale of their hemp paper products, together with interest and the costs and disbursements of this action, including Broadway's attorneys' fees.

130. Broadway may have no adequate remedy at law.

131. As a result of the foregoing, Broadway is additionally entitled to injunctive relief under Paragraph 5 of the NDA.

**SECOND COUNT AGAINST THE COTTRELL DEFENDANTS**
**(Breach of Contract – Settlement Agreement and Limited License)**

132. Broadway repeats, reiterates, and realleges each and every allegation contained in the paragraphs "1" through "131" above, as if same were more fully set forth at length herein.

133. The Settlement, and the Limited License thereunder, is a valid and enforceable contract between Broadway and the Cottrell Defendants.

134. Broadway has performed and fully complied with all of its obligations under the Settlement.

135. The Cottrell Defendants breached the Limited License, including the material provisions of Paragraph 2 thereof, by assigning and/or transferring the Limited License to the Adirondack Defendants without Broadway's prior written consent, in violation of Paragraph 2(g).

136. The Cottrell Defendants further breached and/or are continuing to breach the

Limited License by, upon information and belief, manufacturing, offering for sale, and selling 100% hemp paper bags:

a. With unlicensed distributors, to wit, the Adirondack Defendants and the Hemp Paper Defendants without prior written consent from Broadway;

b. In unlicensed markets not permitted under the Limited License, without prior written consent from Broadway, including, but not limited to, distributors, cafes, grocery stores, and eco-retailers; and

c. In sizes not permitted under the Limited License, without prior written consent from Broadway.

137. Paragraph 2 of the Settlement, which the Cottrell Defendants have breached by virtue of their foregoing conduct, is expressly a material provision of the Settlement.

138. The aforementioned acts of the Cottrell Defendants, as well as other acts to be discovered, constitute breaches of contract.

139. As a result of the Cottrell Defendants' breaches, the Limited License has become voidable at Broadway's option.

140. As a direct and proximate result of the foregoing breaches, Broadway has been damaged in an amount to be determined at trial, together with interest, costs, disbursements of this action, and other relief.

141. Broadway may have no adequate remedy at law.

142. Under Paragraph 17(a) of the Settlement, any Default causes irreparable injury to Broadway that is inadequately compensable in damages, and Broadway is entitled to immediate injunctive relief to prevent breaches of the Agreement without having to prove actual damages or post a bond.

**THIRD COUNT BY BROADWAY HOLDINGS XI, LLC
AGAINST THE ADIRONDACK DEFENDANTS, THE COTTRELL-ADIRONDACK PARTNERSHIP, THE HEMP PAPER DEFENDANTS, AND
THE COTTRELL-HEMP PAPER PARTNERSHIP**
**(Patent Infringement – 35 U.S.C. § 271)**

143. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "142" above, as if same were more fully set forth at length herein.

144. Broadway Holdings XI, LLC is the owner of all right, title, and interest in the Broadway Patent, including the right to sue for and recover damages for infringement.

145. The Broadway Patent, which was allowed on July 2, 2026 and issued on October 6, 2026, is valid and enforceable.

146. Without authorization, the Adirondack Defendants and the Hemp Paper Defendants have used, offered to sell, and/or sold within the United States 100% hemp paper bags that embody and are covered by one or more claims of the Broadway Patent.

147. The infringed patent claims of the Broadway Patent include, by way of illustration and not limitation, claims numbered 1, 3-5, and 12-14.

148. The Broadway Patent is being infringed because, among other things:

a. The Cottrell Defendants have acknowledged, on their website and otherwise, that they are manufacturing hemp paper bags under the Broadway Patent; and

b. The Adirondack Defendants, and the Hemp Paper Defendants, none of which are licensees from Broadway, are each using, offering for sale, and/or selling hemp paper bags manufactured by the Cottrell Defendants, which are subject to the Broadway Patent.

149. The 100% hemp paper bags made, used, offered for sale, and/or sold by the Adirondack Defendants and the Hemp Paper Defendants satisfy each and every element of one or

more claims of the Broadway Patent, either literally or under the doctrine of equivalents.

150. The acts of each of the Adirondack Defendants and the Hemp Paper Defendants constitute direct infringement of the Broadway Patent under 35 U.S.C. § 271(a).

151. The Cottrell-Adirondack Partnership and the Cottrell-Hemp Paper Partnership, by and through their respective partners, likewise made, used, offered for sale, and/or sold the infringing 100% hemp paper bags within the United States, and each directly infringes the Broadway Patent under 35 U.S.C. § 271(a).

152. The Cottrell Defendants have displayed the patent number for the Broadway Patent on their website, indicating that the 100% hemp paper bags being marketed and sold by both the Adirondack Defendants and Hemp Paper Defendants are covered by the patent.

153. The Adirondack Defendants, Hemp Paper Defendants, Cottrell-Adirondack Partnership (other than the Cottrell Defendants) and the Cottrell-Hemp Paper Partnership (other than the Cottrell Defendants) have no license or authorization from Broadway to make, use, offer for sale, or sell the patented 100% hemp paper bags.

154. The non-exclusive Limited License granted under the Settlement was not transferable or assignable to the Adirondack Defendants, the Hemp Paper Defendants, the Cottrell-Adirondack Partnership, and/or the Cottrell-Hemp Paper Partnership without Broadway's prior written consent, which was never given.

155. There has been, and continues to be, direct infringement of the Broadway Patent by others, including by the Adirondack Defendants, the Hemp Paper Defendants, the Cottrell-Adirondack Partnership, and/or the Cottrell-Hemp Paper Partnership and their respective customers who use, offer for sale, and resell the infringing 100% hemp paper bags.

156. Alternatively, Defendants Michael O'Connor, Benjamin Draper, and Julia Park

(collectively, the "Inducing Defendants") are each liable for actively inducing the infringement of the Broadway Patent, under 35 U.S.C. § 271(b).

157. Each of the Inducing Defendants are liable for actively inducing infringement because each had knowledge of, or were willfully blind to, the existence of the Broadway Patent. The Inducing Defendants acquired that knowledge by virtue of their respective partnerships and dealings with the Cottrell Defendants, whose principals, Defendants Josh Cottrell and James Cottrell II, are the named co-inventors of the very technology claimed in the Broadway Patent, as well as through the public filings described above.

158. Each of the Inducing Defendants further knew, or were willfully blind to, the fact that the acts they induced constitute infringement of the Broadway Patent.

159. With that knowledge or willful blindness, each of the Inducing Defendants took affirmative steps to, and specifically intended to, cause infringement of the Broadway Patent, including by directing, encouraging, facilitating, and instructing their respective customers and one another to use, offer for sale, and/or sell the infringing 100% hemp paper bags.

160. As Adirondack's Owner, President, and Director of Operations, Defendant Michael O'Connor directed and controlled, acting on behalf of himself, Adirondack, and the Cottrell-Adirondack Partnership, and actively induced, the foregoing infringing acts of Adirondack. As such, he is personally liable for inducing Adirondack's and the Cottrell-Adirondack Partnership's respective infringements of the Broadway Patent under 35 U.S.C. § 271(b).

161. As the Chief Executive Officer, members, and/or managing members of Hemp Paper and Hawaii Fibers, Defendants Draper and Park each directed and controlled, acting on behalf of themselves, Hemp Paper, Hawaii Fibers, and the Cottrell-Hemp Paper Partnership, and actively induced, the foregoing infringing acts of Hemp Paper, Hawaii Fibers, and the Cottrell-

Hemp Paper Partnership, and are each personally liable for inducing Hemp Paper's and Hawaii Fibers', and the Cottrell-Hemp Paper Partnership's respective infringements of the Broadway Patent under 35 U.S.C. § 271(b).

162. As a direct and proximate result of the foregoing infringement, Broadway has been damaged and is entitled to recover damages adequate to compensate for the infringement, but in no event less than a reasonable royalty in an amount to be determined at trial, under 35 U.S.C. § 284, together with an accounting, interest, costs, disbursements of this action, and other relief.

163. The acts of infringement, as alleged above, has been, and continues to be, willful and deliberate, having continued after and with knowledge of, or willful blindness to, the Broadway Patent.

164. Accordingly, Broadway is additionally entitled to enhanced damages under 35 U.S.C. § 284.

165. Broadway may have no adequate remedy at law.

166. Broadway is additionally entitled to a preliminary and permanent injunction under 35 U.S.C. § 283 restraining the infringing Defendants from further acts of infringement of the Broadway Patent.

**FOURTH COUNT AGAINST THE ADIRONDACK DEFENDANTS**
**(Tortious Interference with Contract – Settlement and Limited License)**

167. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "166" above, as if same were more fully set forth at length herein.

168. The Settlement, and the Limited License thereunder, is a valid and enforceable contract between Broadway and the Cottrell Defendants.

169. The Adirondack Defendants are not parties to the Settlement.

170. Upon information and belief, the Adirondack Defendants knew, or by virtue of their partnership with the Cottrell Defendants, had reason to know of the Settlement and Limited License, including its provisions restricting the Limited License and prohibiting its assignment without Broadway's prior written consent.

171. The Adirondack Defendants intentionally interfered with the Limited License, without justification or excuse, by taking an unauthorized and unlicensed assignment of the Limited License without Broadway's consent, and by marketing and selling the unauthorized and unlicensed 100% hemp paper bags in violation of the terms of the Limited License.

172. The Adirondack Defendants' interference was for the purpose of inducing the Cottrell Defendants to breach their contractual obligations with Broadway under the Limited License and/or to render the performance of same impossible.

173. The Adirondack Defendants' conduct was intentional and wrongful.

174. The Adirondack Defendants had no license, consent, or justification for their conduct.

175. As a direct and proximate result of the Adirondack Defendants' interference, Broadway has sustained damages.

176. As a result of the foregoing, the acts of the Adirondack Defendants constitute tortious interference with contract, and Broadway has been damaged and demands judgment against the Adirondack Defendants in an amount to be determined at trial, together with a constructive trust and disgorgement of the income the Adirondack Defendants have derived from their unauthorized and unlicensed sales of 100% hemp paper bags, and the interest, costs, disbursements of this action, and other relief.

177. Additionally, a constructive trust should be imposed over all corporate opportunities, income, or otherwise generated by the Adirondack Defendants as a result of the foregoing acts in violation of Broadway's contractual rights, and disgorged.

**FIFTH COUNT AGAINST THE HEMP PAPER DEFENDANTS**
**(Intentional Interference with Economic Relations – NDA)**

178. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "177" above, as if same were more fully set forth at length herein.

179. The NDA, while it was in full force and effect, was a valid and enforceable contract between Broadway and the Cottrell Defendants, under which the Cottrell Defendants owed Broadway duties, including to maintain the secrecy of, and not to disclose or use, Broadway's Confidential Information.

180. The Hemp Paper Defendants are not parties to the NDA, and are third parties, and strangers, to that contractual relationship.

181. The Hemp Paper Defendants knew, or by virtue of their partnership with the Cottrell Defendants, had reason to know, of Broadway's NDA with the Cottrell Defendants.

182. The Hemp Paper Defendants intentionally interfered with Broadway's contractual relationship under the NDA, including by soliciting, acquiring, and obtaining Broadway's

Confidential Information from the Cottrell Defendants in violation of the NDA.

183. The Hemp Paper Defendants accomplished their interference through improper means, including: (a) by misappropriating Broadway's Confidential Information in violation of the Defend Trade Secrets Act of 2016 and the New Jersey Trade Secrets Act; (b) by inducing the Cottrell Defendants to breach their obligations under the NDA; and (c) through deceit and misrepresentation, including the Hemp Paper Defendants' false public claims to be the inventors of bags made from 100% hemp paper, and their participation in the concealment of their relationship with the Cottrell Defendants.

184. Alternatively, the Hemp Paper Defendants acted with an improper purpose, namely, to injure Broadway by appropriating Broadway's patented technology, trade secrets, and markets for themselves.

185. The Hemp Paper Defendants had no justification for their conduct, and had no license, consent, or authorization from Broadway.

186. As a direct and proximate result of the Hemp Paper Defendants' interference, Broadway has sustained damages, including the loss of license royalties and other economic benefits of its contractual relationships.

187. As a result of the foregoing, the acts of the Hemp Paper Defendants constitute intentional interference with economic relations, and Broadway has been damaged and demands judgment against the Hemp Paper Defendants in an amount to be determined at trial, together with a constructive trust and disgorgement of the profits the Hemp Paper Defendants have derived from their unauthorized and unlicensed sales of 100% hemp paper bags, and the interest, costs, and disbursements of this action, and other relief.

188. Additionally, a constructive trust should be imposed over all corporate opportunities, income, or otherwise generated by the Hemp Paper Defendants as a result of the foregoing acts, including the proceeds of Defendant Draper's book, in violation of Broadway's rights, and disgorged.

**SIXTH COUNT AGAINST THE HEMP PAPER DEFENDANTS**
**(Intentional Interference with Economic Relations – Settlement Agreement and License)**

189. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "188" above, as if same were more fully set forth at length herein.

190. The Settlement, and the Limited License thereunder, is a valid and enforceable contract between Broadway and the Cottrell Defendants.

191. The Hemp Paper Defendants are not parties to the Settlement and Limited License, and are third parties to Broadway's contractual relationship.

192. The Hemp Paper Defendants knew, or by virtue of their partnership with the Cottrell Defendants, had reason to know about the Settlement and Limited License.

193. The Hemp Paper Defendants intentionally interfered with Broadway's contractual relationship, including by taking an unauthorized transfer of license rights from the Cottrell Defendants, by inducing and participating in the Cottrell Defendants' breaches of the Settlement and Limited License, and by marketing and selling unauthorized and unlicensed 100% hemp paper bags. The Hemp Paper Defendants accomplished their interference through improper means. The Hemp Paper Defendants' conduct violated objective, identifiable legal standards, including, by way of illustration only, by infringing the Broadway Patent under 35 U.S.C. § 271; and through deceit and misrepresentation, including the Hemp Paper Defendants' false public claims to be the inventors of bags made from 100% hemp paper and their participation in the

concealment of their relationship with the Cottrell Defendants.

194. Alternatively, the Hemp Paper Defendants acted with an improper purpose, namely, to injure Broadway by appropriating Broadway’s patented technology, trade secrets, and markets for themselves.

195. The Hemp Paper Defendants had no justification for their conduct, and had no license, consent, or authorization from Broadway.

196. As a direct and proximate result of the Hemp Paper Defendants’ interference, Broadway has sustained damages, including the loss of license royalties and other economic benefits of its contractual relationships.

197. As a result of the foregoing, the acts of the Hemp Paper Defendants constitute intentional interference with economic relations, and Broadway has been damaged and demands judgment against the Hemp Paper Defendants in an amount to be determined at trial, together with a constructive trust and disgorgement of the profits the Hemp Paper Defendants have derived from their unauthorized and unlicensed sales of 100% hemp paper bags, and the interest, costs, and disbursements of this action, and other relief.

198. Additionally, a constructive trust should be imposed over all corporate opportunities, income, or otherwise generated by the Hemp Paper Defendants as a result of the foregoing acts, including the proceeds of Defendant Draper’s book, in violation of Broadway’s rights, and disgorged.

**SEVENTH COUNT AGAINST THE COTTRELL DEFENDANTS**
**(Fraud in the Inducement)**

199. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "198" above, as if same were more fully set forth at length herein.

200. In connection with entering into the Settlement and Limited License, the Cottrell Defendants made material representations of presently existing fact, including that they were entering into the Settlement intending to perform and abide by its terms, and, under Paragraph 18 of the Settlement, that "there are no pending agreements, transactions or negotiations to which they are parties that would render this Agreement or any part hereof void, voidable or unenforceable."

201. The Cottrell Defendants were engaging in acts prior to entering into the Settlement and Limited License, that they knew would constitute violations of the Settlement and Limited License, and they did so anyway.

202. Moreover, the Cottrell Defendants intended to continue and did continue these acts after the entry into the Settlement and Limited License.

203. The foregoing representations were false when made, and the Cottrell Defendants knew them to be false, because the Cottrell Defendants, by way of illustration only:

a. Delayed entering into a settlement in 2024, which ultimately failed, while entering into a partnership with the Hemp Paper Defendants in or about that time;

b. Disclosed Broadway's Confidential Information to the Hemp Paper Defendants;

c. Settled in 2025, while not intending to abide by its terms;

d. At the time of the Settlement, the Cottrell Defendants were dealing with the Adirondack Defendants in violation of the Limited License;

e. At the time of the Settlement, the Cottrell Defendants were dealing with the Hemp Paper Defendants in violation of the Limited License; and

f. Continued to have a present intention not to perform, as further evidenced by their continued concealment of the Cottrell Defendants' unauthorized dealings, including Josh Cottrell's misrepresentations and material omissions to Broadway in October 2026, as described above.

204. The Cottrell Defendants made these misrepresentations, including their promises to perform made with a present intention not to perform, with the intention that Broadway rely thereon by entering into the Settlement.

205. Broadway reasonably relied on the Cottrell Defendants' misrepresentations and undertakings, to its detriment, by entering into the Settlement, including by granting the Limited License, by agreeing to the releases set forth in Paragraph 13 of the Settlement, and by agreeing to the limitation on the amounts payable to Broadway set forth in Paragraphs 3 and 4 of the Settlement.

206. As a direct and proximate result of the Cottrell Defendants' fraud in the inducement, Broadway has been damaged.

207. The conditional releases under Paragraph 13 of the Settlement, and the limitation on the royalty payable to Broadway under Paragraphs 3 and 4 of the Settlement, are severable, material provisions of the Settlement that were procured by the Cottrell Defendants' fraud.

208. Moreover, Paragraph 13 of the Settlement provides that "[i]n the event that any material representation or warranty proves materially false, or of noncompliance with any

undertaking, the release to the breaching party shall be void and have no effect."

209. The Cottrell Defendants' acts constitute fraudulent inducement.

210. As a result of the foregoing, Broadway has been damaged and demands judgment against the Cottrell Defendants in an amount to be determined at trial, together with partial rescission as set forth above, interest, and the costs and disbursements of this action, including Broadway's attorneys' fees.

211. Accordingly, Broadway is entitled to partial rescission of the Settlement, to wit, rescission of the releases set forth in Paragraph 13 and of the limitation on the amounts payable to Broadway set forth in Paragraphs 3 and 4, such that the releases are void and of no effect and the limitation on amounts payable is rescinded, while the remainder of the Settlement, including Broadway's ownership of the Broadway Patent, remains in full force and effect.

**EIGHTH COUNT AGAINST THE COTTRELL DEFENDANTS, THE HEMP PAPER DEFENDANTS, AND THE COTTRELL-HEMP PAPER PARTNERSHIP**
**(Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836)**

212. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "211" above, as if same were more fully set forth at length herein.

213. Broadway's trade secrets, including, but not limited to, its processes, methodologies, and specifications for manufacturing hemp paper products, its trade secrets regarding hemp paper bags made from blends, including but not limited to, of hemp and wood pulp, and its trade secrets regarding certain applications of its technology, constitute trade secrets within the meaning of 18 U.S.C. § 1839(3), in that Broadway derives independent economic value from this information not being generally known to, or readily ascertainable by proper means by, others who can obtain economic value from their disclosure or use, and Broadway has taken reasonable measures to keep them secret.

214. Broadway's trade secrets relate to products and methods used in, and intended for use in, interstate and foreign commerce.

215. The Cottrell Defendants misappropriated Broadway's trade secrets within the meaning of 18 U.S.C. § 1839(5) by disclosing them to the Hemp Paper Defendants and to the other partners of the Cottrell-Hemp Paper Partnership (other than the Cottrell Defendants), without Broadway's consent, in breach of the Cottrell Defendants' duty to maintain their secrecy (under the NDA while it remained in full force and effect, and otherwise from the confidential relationship between Broadway and the Cottrell Defendants).

216. The Hemp Paper Defendants and the Cottrell-Hemp Paper Partnership misappropriated Broadway's trade secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring, disclosing (including, but not limited to, within Defendant Draper's book), and/or using them knowing, or having reason to know, that the trade secrets were derived from or through the Cottrell Defendants, who owed and breached a duty to maintain their secrecy.

217. The Cottrell Defendants', Hemp Paper Defendants', and the Cottrell-Hemp Paper Partnership's misappropriation of Broadway's trade secrets was willful and malicious.

218. As a direct and proximate result of the Cottrell Defendants', Hemp Paper Defendants' and the Cottrell-Hemp Paper Partnership's misappropriation, Broadway has been damaged and demands judgment against the Cottrell Defendants, the Hemp Paper Defendants, and the Cottrell-Hemp Paper Partnership in an amount to be determined at trial, including Broadway's actual losses and any unjust enrichment, or in lieu thereof, a reasonable royalty, to wit, under 18 U.S.C. § 1836(b)(3)(B), together with an accounting, interest, and the costs and disbursements of this action.

219. Broadway may have no adequate remedy at law, and is entitled to injunctive relief,

to wit, under 18 U.S.C. § 1836(b)(3)(A).

220. Due to the Cottrell Defendants', Hemp Paper Defendants' and the Cottrell-Hemp Paper Partnership's willful and malicious misappropriation, Broadway is additionally entitled to exemplary damages in an amount up to twice the amount of damages awarded, to wit, under 18 U.S.C. § 1836(b)(3)(C), and to its reasonable attorneys' fees, to wit, under 18 U.S.C. § 1836(b)(3)(D).

**NINTH COUNT AGAINST THE COTTRELL DEFENDANTS, THE HEMP PAPER DEFENDANTS, AND THE COTTRELL-HEMP PAPER PARTNERSHIP**
**(Violation of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 *et seq.*)**

221. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "220" above, as if same were more fully set forth at length herein.

222. Broadway's trade secrets, including, but not limited to, its processes, methodologies, and specifications for manufacturing hemp paper products, its trade secrets regarding hemp paper bags made from blends, including but not limited to, of hemp and wood pulp, and its trade secrets regarding certain applications of its technology, constitute "trade secrets" under N.J.S.A. § 56:15-2.

223. The Cottrell Defendants obtained Broadway's trade secrets through, and were obligated to maintain their secrecy, under the NDA while it remained in full force and effect, and otherwise from the confidential relationship between Broadway and the Cottrell Defendants.

224. The Cottrell Defendants misappropriated Broadway's trade secrets by disclosing them to the Hemp Paper Defendants, without Broadway's authorization, in breach of express or implied duties to maintain their secrecy.

225. The Hemp Paper Defendants, both individually and in their capacities as partners of the Cottrell-Hemp Paper Partnership, misappropriated Broadway's trade secrets by acquiring,

disclosing, and/or using them knowing, or having reason to know, that the trade secrets were acquired from or through the Cottrell Defendants, who breached a duty to maintain their secrecy.

226. The Hemp Paper Defendants and the Cottrell-Hemp Paper Partnership have acquired, used, and disclosed, and continue to use, and disclose, Broadway’s trade secrets without Broadway's authorization.

227. The Cottrell Defendants likewise continue to use and disclose Broadway’s trade secrets without authorization, including trade secrets concerning blended bags and non-bag applications of Broadway’s technology.

228. The foregoing acts, which constitute misappropriation, is ongoing.

229. As a result of the foregoing, the Cottrell Defendants’, Hemp Paper Defendants’, and the Cottrell-Hemp Paper Partnership’s respective acts constitute violations of the New Jersey Trade Secrets Act, and Broadway has been damaged and demands judgment against the Cottrell Defendants, the Hemp Paper Defendants, and the Cottrell-Hemp Paper Partnership in an amount to be determined at trial, including Broadway’s actual losses and any unjust enrichment, or in lieu thereof a reasonable royalty, to wit, under N.J.S.A. § 56:15-3, together with an accounting, interest, and the costs and disbursements of this action.

230. Broadway may have no adequate remedy at law, and is entitled to injunctive relief, to wit, under N.J.S.A. § 56:15-3.

231. The Cottrell Defendants’, Hemp Paper Defendants’, and the Cottrell-Hemp Paper Partnership’s misappropriation was willful and malicious, and they are therefore additionally liable for exemplary damages, to wit, under N.J.S.A. § 56:15-4, and for Broadway’s reasonable attorneys’ fees, to wit, under N.J.S.A. § 56:15-6.

**TENTH COUNT AGAINST THE COTTRELL DEFENDANTS, THE HEMP PAPER DEFENDANTS, AND THE COTTRELL-HEMP PAPER PARTNERSHIP**
**(Unfair Competition)**

(*Pled in the Alternative to Counts Eighth and Ninth*)

232. Broadway repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "231" above, as if same were more fully set forth at length herein.

233. The Cottrell Defendants, Hemp Paper Defendants, and the Cottrell-Hemp Paper Partnership engaged in unfair competition against Broadway by, among other things, utilizing Confidential Information.

234. The Cottrell Defendants, Hemp Paper Defendants, and the Cottrell-Hemp Paper Partnership misappropriated Broadway's commercial advantage by wrongfully taking the Confidential Information to manufacture their own products.

235. The Cottrell Defendants, Hemp Paper Defendants, and the Cottrell-Hemp Paper Partnership engaged in unfair competition against Broadway by offering for sale and selling 100% hemp paper bags without Broadway's authorization.

236. The Cottrell Defendants, Hemp Paper Defendants, and the Cottrell-Hemp Paper Partnership misappropriated Broadway's labors, skills, and/or expenditures by wrongfully taking the Confidential Information in connection with their own products, and/or offering for sale and selling 100% hemp paper bags without Broadway's authorization.

237. The acts engaged in by the Cottrell Defendants, Hemp Paper Defendants, and the Cottrell-Hemp Paper Partnership, as set forth, above were conducted in bad faith.

238. As a result of the foregoing, the Cottrell Defendants', Hemp Paper Defendants', and the Cottrell-Hemp Paper Partnership's respective acts constitute unfair competition, and Broadway has been damaged and demands judgment against them in an amount to be determined

at trial, together with income and/or a reasonable royalty on every sale of the Cottrell Defendants', Hemp Paper Defendants', and the Cottrell-Hemp Paper Partnership's hemp paper bag products in an amount to be determined at trial, and that the Cottrell Defendants, Hemp Paper Defendants and the Cottrell-Hemp Paper Partnership additionally provide to Broadway an accounting, on a monthly basis, of all income or royalties they have received for every sale of their hemp paper bag products, together with interest and the costs and disbursements of this action, including Broadway's attorneys' fees.

**WHEREFORE,** Broadway respectfully requests that this Court enter Judgment as follows:

a. Granting Broadway an award of its lost profits from Defendants' unauthorized, unlicensed, and/or infringing sales of 100% hemp paper bags, in an amount to be determined at trial, and for an accounting of same (Under the First, Second, Third, Fourth, Fifth, Sixth, and Tenth Counts);

b. Awarding Broadway its damages for Defendants' misappropriation of Broadway's trade secrets, including Broadway's actual losses and any unjust enrichment, or in lieu thereof a reasonable royalty, together with exemplary damages, to wit, under 18 U.S.C. § 1836 and N.J.S.A. § 56:15-1 *et seq.* (Under the Eighth and Ninth Counts);

c. Imposing a constructive trust over all corporate opportunities, income, or otherwise generated as a result of the Defendants' misconduct in violation of Broadway's contract rights, and disgorging same (Under the First, Second, Fourth, Fifth, and Sixth Counts);

d. Granting Broadway a reasonable royalty on all of Defendants' sales going forward, in an amount to be determined at trial, but at least a 10% royalty, consistent with the Limited License, and without limitation under the Settlement based on the Cottrell Defendants' breaches of the Limited License (and without limitation, beyond the cap on royalties under the Settlement) (Under the Second and Third Counts);

e. Preliminarily and permanently enjoining:

   i. The Cottrell Defendants and the Hemp Paper Defendants, and all those acting in concert with them, from directly or indirectly using or disclosing Broadway's Confidential Information, and commanding

them to, at Broadway's option, return or destroy all copies of same (Under the First, Eighth, and Ninth Counts);

ii. Defendants from marketing and selling products incorporating Broadway's Confidential Information in any manner whatsoever (Under the First, Eighth, and Ninth Counts);

iii. The Cottrell Defendants, and all those acting in concert with them, from further assigning, transferring, exploiting, or exercising the Limited License, and from manufacturing, marketing, offering for sale, and/or selling 100% hemp paper bags in breach of the Limited License, as provided under paragraph 17(a) of the Settlement, and without Broadway having to prove actual damages or post a bond (Under the Second Count);

iv. Defendants, and all those acting in concert with them, under 35 U.S.C. § 283, from further infringing, or inducing the infringement of, the Broadway Patent, including by manufacturing, marketing, offering for sale, and/or selling 100% hemp paper bags embodying the Broadway Patent (Under the Third Count);

f. Commanding Defendants to, at Broadway's option, return or destroy all copies of Broadway's Confidential Information and trade secrets, and cease any further attempts to use same (Under the First, Eighth, and Ninth Counts);

g. Awarding Broadway damages adequate to compensate for Defendants' infringement of the Broadway Patent, but in no event less than a reasonable royalty, together with an accounting, under 35 U.S.C. § 284 (Under the Third Count);

h. Disgorging proceeds from Defendant Draper's book (Under the Fifth and Sixth Counts);

i. Rescinding, in part, the Settlement and Limited License as a result of the Cottrell Defendants' fraudulent inducement (Under the Seventh Count):

i. The conditional releases set forth in paragraph 13 of the Settlement; and

ii. The cap on the royalty payable to Broadway set forth in paragraphs 3 and 4 of the Settlement;

j. Awarding Broadway punitive and/or exemplary damages (Under the Seventh, Eighth, and Ninth Counts);

k. Awarding Broadway enhanced damages, up to treble the amount of damages assessed, for willful infringement under 35 U.S.C. § 284 (Under the Third

Count);

l. Awarding Broadway pre- and post-judgment interest;

m. Awarding Broadway its reasonable attorneys' fees;

n. Awarding Broadway its costs and disbursements of this action; and

o. Granting Broadway such other, further, or different relief as the Court deems just and proper.

**JURY DEMAND**

Broadway hereby demands Trial by Jury on all issues so triable.

Dated: Mineola, New York
November 6, 2026

Respectfully submitted,

**LEVITT LLP**

*/s/ Trevor M. Gomberg*

Steven L. Levitt
New York State Bar No. 1762137
*Pro Hac Vice* Application Forthcoming
Trevor M. Gomberg
New Jersey State Bar No. 020962009
Matthew I. Koopersmith
New Jersey State Bar No. 316252020
129 Front Street
Mineola, New York 11501
Telephone: (516) 248-9700
Facsimile: (516) 741-9224
slevitt@levittlawllp.com
tgomberg@levittlawllp.com
mkoopersmith@levittlawllp.com

Philip M. Weiss
New York State Bar No. 2522324
*Pro Hac Vice* Application Forthcoming
Weiss & Weiss, Attorneys at Law, P.C.
410 Jericho Turnpike, Suite 105
Jericho, New York 11753
Telephone: (516) 739-1500
Facsimile: (516) 739-2189
hello@weissandweisspc.com

*Attorneys for Plaintiffs*

**VERIFICATION**

I, Steve Kohn, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Chief Executive Officer of Plaintiffs BROADWAY KLEER-GUARD CORP. d/b/a BROADWAY INDUSTRIES, BROADWAY HOLDINGS IX, LLC, and BROADWAY HOLDINGS XI, LLC; that I am familiar with the matters as set forth in the Verified Complaint; and that under penalty of perjury, the averments in the Verified Complaint are true and correct to the best of my knowledge and belief.

Steve Kohn